# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOSH RAM,<br><br>　　　　Petitioner,<br><br>　v.<br><br>WARDEN,<br><br>　　　　Respondent. | Case No. 1:21-cv-01520-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO DENY RESPONDENT'S MOTION TO DISMISS AND DENY PETITION FOR WRIT OF HABEAS CORPUS<br><br>(ECF No. 11) |

　　　　Petitioner Santosh Ram is a federal prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, Petitioner challenges a prison disciplinary proceeding on due process grounds. Before the Court is Respondent's motion to dismiss. (ECF No. 11). For the reasons discussed herein, the undersigned recommends denial of Respondent's motion to dismiss and denial of the petition for writ of habeas corpus.

## I.

## BACKGROUND

　　　　Petitioner currently is in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution in Mendota, California. The incident in question, however, occurred while Petitioner was housed at the Great Plains Correctional Facility ("Great Plains CF").[1]

---

[1] Great Plains CF was a privately owned and operated contract facility that was closed effective May 31, 2021. (ECF No. 11-1 at 23).

The reporting officer described the incident as follows: At approximately 10:35 a.m. on April 30, 2020, Sergeant Firanski was called to BF Pod because Petitioner was being non-compliant and refusing to move to his newly assigned cell. At that time, Firanski gave Petitioner a direct order that he was moving to Charlie Unit. Petitioner refused and sat down. Firanski gave Petitioner a direct order to stand up because Firanski was going to escort Petitioner to his new cell. Petitioner then stood up. Firanski and Officer Navarro attempted to escort Petitioner to his newly assigned housing unit, but Petitioner became aggressive and struck Firanski in the chest with Petitioner's right elbow. Petitioner was placed on the wall, continued to resist, and then was placed on the ground where hand and leg restraints were applied. Petitioner was escorted to the Restricted Housing Unit and medically assessed. (ECF No. 1 at 10;[2] App. 40[3]).

On May 1, 2020, Petitioner was issued an incident report charging him with Assaulting Any Person, in violation of 28 C.F.R. § 541.13, Code 224. (ECF No. 1 at 16, 19; App. 36). Lieutenant W. Christian was assigned to investigate the charges and concluded that Petitioner had been properly charged with Assaulting Any Person. (App. 36–37). The incident report was then forwarded to the Unit Disciplinary Committee ("UDC") for further action. (App. 37). The UDC conducted a hearing and determined that based on the severity of the incident report there was sufficient basis to refer the matter to the Disciplinary Hearing Officer ("DHO") for further hearing. (App. 36).

On June 17, 2020, DHO B. Trimpey conducted a hearing and found that the act was committed as charged. Petitioner was assessed a sanction of twenty-seven days of disallowed good conduct time, thirty days' loss of phone privileges, and fifteen days of disciplinary segregation. (App. 33–35). On July 3, 2020, Petitioner submitted an appeal to the BOP's Correctional Programs Division, Privatization Management Branch ("PMB") that was received by the PMB on July 30, 2020 and denied on the merits on March 5, 2021. (App. 92–95). Meanwhile, on March 3, 2021, Petitioner mailed an appeal to the National Inmate Appeals Administrator, Office of General Counsel ("Central Office"), which was rejected on March 26,

---

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.
[3] "App." refers to the Appendix filed by Respondent on January 20, 2022. (ECF No. 11-1). Appendix page numbers refer to the page numbers stamped at the bottom right corner.

1  2021 for failure to include a copy of the PMB's response to Petitioner's appeal. (ECF No. 1 at
2  13, 25; App. 67, 89).
3        On October 14, 2021, Petitioner filed the instant federal petition for writ of habeas
4  corpus. (ECF No. 1). Petitioner asserts that he is innocent and did not strike any staff in any
5  manner and alleges that he was requesting to speak to Major Gooch about safety, security, and
6  health concerns when untrained staff escalated the situation in retaliation for helping other
7  inmates to file lawsuits against the facility and staff. (Id. at 6, 10). Petitioner also raises due
8  process issues, alleging that the UDC did not provide Petitioner with a written copy of its
9  decision and the DHO did not provide Petitioner with a copy of the written DHO report within
10 fifteen work days. (Id. at 10). Petitioner further asserts that the DHO was biased, unfair, and
11 uncertified. (ECF No. 1 at 11).
12       On January 20, 2022, Respondent filed a motion to dismiss the petition for
13 nonexhaustion. Therein, Respondent also argues that the petition should be denied on the merits.
14 (ECF No. 11).  To date, no opposition or statement of nonopposition has been filed, and the time
15 for doing so has passed.

## II.
## DISCUSSION

### A. Exhaustion

19 "As a prudential matter, courts require that habeas petitioners exhaust all available
20 judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678
21 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional
22 prerequisite, exhaustion can be waived if pursuing administrative remedies would be futile. Id.
23 (citations omitted). Inmates in contract facilities file DHO appeals with the PMB and can further
24 appeal to the National Inmate Appeals Administrator, Office of General Counsel ("Central
25 Office"). (App. 66). A final decision from the Office of General Counsel completes the BOP's
26 administrative remedy process. See 28 C.F.R. § 542.15(a).
27       Petitioner filed an appeal with the PMB that was received on July 30, 2020. (App. 67).
28 On January 18, 2021, Petitioner submitted an inmate request form to the Warden inquiring about

the status of the appeal. On January 25, 2021, a staff response indicated that the appeal was still pending and noted that Petitioner could write to the PMB requesting an update on Petitioner's appeal. (ECF No. 1 at 31). On March 3, 2021, Petitioner mailed an appeal to the National Inmate Appeal Administrator. (ECF No. 1 at 13). On March 5, 2021, two days after Petitioner submitted his appeal with the National Inmate Appeal Administrator, the PMB denied Petitioner's appeal on the merits. (App. 92–93). On March 26, 2021, the National Inmate Appeal Administrator rejected Petitioner's appeal for failure to include a copy of the PMB's decision.[4] (ECF No. 1 at 25; App. 67, 89).

Subsequently, Petitioner contacted a case management coordinator because Petitioner had not received any response from the National Inmate Appeal Administrator. On May 18, 2021, a case management coordinator responded to Petitioner's message, stating that the Central Office rejected Petitioner's appeal for failure to include a copy of the PMB's decision and allowed Petitioner to reapply within fifteen days of the rejection notice sent on March 26, 2021. (ECF No. 1 at 25). However, Petitioner alleges that he did not receive the PMB's decision on his appeal until June 14, 2021. (ECF No. 1 at 13).

Generally, dismissal for failure to exhaust administrative remedies is appropriate where a petitioner "attempted to appeal the BOP's decisions, [and] the record shows that the BOP rejected his appeals because they did not meet BOP requirements." Reynolds v. McGrew, 594 F. App'x 377, 378 (9th Cir. 2015). Here, Petitioner's appeal to the National Inmate Appeals Administrator was rejected for failure to include a copy of the PMB's decision. However, based on the petition and a copy of the messages between Petitioner and the case management coordinator, it appears that in May 2021 Petitioner had not received the Central Office's March 26, 2021 rejection that allowed Petitioner to reapply within fifteen days of the rejection notice. Moreover, Petitioner alleges that he did not receive a copy of the PMB's decision until June 14, 2021, well after the Central Office's deadline for reapplication. The Court assumes, without

---

[4] Petitioner was unable to attach a copy of PMB's response because it was issued on March 5, 2021, and the petition states that Petitioner submitted his appeal to the National Inmate Appeal Administrator on March 3, 2021. Pursuant to Program Statement 1330.18, Administrative Remedy Program, Petitioner was entitled to submit his appeal to the National Inmate Appeal Administrator as more than thirty days had passed since his appeal was received by the PMB on July 30, 2020. (App. 67).

1 deciding, that Petitioner's failure to properly exhaust administrative remedies can be excused and
2 will address the merits of Petitioner's claims below.

     **B. Review of Claims**

        1. <u>Due Process Requirements of Prison Disciplinary Proceedings</u>

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. <u>Id.</u> at 556. When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of the charges at least twenty-four hours before a disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1984); <u>Wolff</u>, 418 U.S. at 563–67. Inmates are entitled to an impartial decisionmaker in a disciplinary proceeding. <u>Wolff</u>, 418 U.S. at 570–71.

In addition to various procedural requirements for disciplinary proceedings as set forth in <u>Wolff</u>, due process requires that there be "some evidence" to support the disciplinary decision to revoke good time credits. <u>Hill</u>, 472 U.S. at 454–55. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion . . . ." <u>Id.</u> at 455–56.

        2. <u>Sufficiency of the Evidence</u>

In the petition, Petitioner asserts that he "did not strike any staff in any manner" and that he was falsely charged in retaliation for helping other inmates to file lawsuits against the facility and staff. (ECF No. 1 at 7). Respondent contends that the evidence relied upon by the DHO during the hearing—still photographs, CCTV images, contemporaneous reports—satisfies the "some evidence" standard. (ECF No. 11 at 7).

///

The Supreme Court has held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." Hill, 472 U.S. at 455. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that *could* support the conclusion . . . ." Id. at 455–56 (emphasis added). "This test is 'minimally stringent.'" Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013) (quoting Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994)).

Here, the DHO relied on "the nine still photographs of the inmate and staff involved," "the review of CCTV showing [Petitioner] walking towards the BF Entry Door where [he] turn[s] around towards the escorting officers striking Sgt. Firanski in the chest," the incident report written by Firanski, and Petitioner's statement that he did not intentionally assault the staff members but it may have been done accidentally[5] in finding that Petitioner committed the acts as charged. (App. 35). The Court is not tasked with weighing evidence, assessing the credibility of witnesses, or examining the entire record in order to determine whether the requirements of due process are satisfied. "Instead, the relevant question is whether there is *any* evidence in the record that *could* support the conclusion," and the "Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." Hill, 472 U.S. at 455–56, 457 (emphasis added). Given this "minimally stringent" standard, the Court finds that there is "some evidence" to support the decision to disallow good conduct time. Accordingly, Petitioner is not entitled to habeas relief on this ground.

3. Written Copies of Decisions

Petitioner asserts that he is entitled to relief because the UDC did not provide a written copy of its decision following its review of the incident report as required by BOP Program Statement 5270.09, ch. 4, section (h). Petitioner also asserts that the DHO did not provide

---

[5] Petitioner alleges that the DHO report's summary of inmate statement is inaccurate because Petitioner never stated that the assault could have occurred by accident. Petitioner indicates that this statement was copied from someone else's report. (ECF No. 1 at 12). Even if Petitioner never stated that the assault could have occurred by accident, it does not affect the Court's conclusion that the some evidence standard was satisfied because the DHO relied on other evidence for his decision.

Petitioner a copy of the written DHO report within fifteen work days as required by BOP Program Statement 5270.09, ch. 5, section (h). (ECF No. 1 at 10). Respondent argues that Petitioner's claim regarding lack of receipt of a UDC decision is meritless as a matter of law because the UDC merely conducted a preliminary review, did not render a decision, and referred the charge against Petitioner to the DHO as provided by 28 C.F.R. § 541.7(a). (ECF No. 11 at 7).

Neither the Supreme Court nor the Ninth Circuit has held that adherence to the timelines and procedures established by a prison's inmate discipline program regulations is required to satisfy constitutional due process. The Due Process Clause only requires that prisoners be afforded those procedures mandated by Wolff and its progeny; it does not require that a prison comply with its own, more generous procedures. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). See Walker, 14 F.3d at 1420 ("[I]f state procedures rise above the floor set by the due process clause, a state could fail to follow its own procedures yet still provide sufficient process to survive constitutional scrutiny." (internal quotation marks omitted) (quoting Rogers v. Okin, 738 F.2d 1, 8 (1st Cir. 1984))).

Here, the UDC's failure to provide a written copy of its decision following its review of the incident report did not violate Wolff because the UDC hearing was a preliminary review that did not result in the loss of good time credits and Petitioner does not allege that he failed to receive advance written notice of the charges at least twenty-four hours before the DHO hearing. Although the failure to provide Petitioner a copy of the written DHO report within fifteen work days did not comply with the BOP's Program Statement, adherence to timelines established by prison regulations is not required to satisfy constitutional due process. Accordingly, Petitioner is not entitled to habeas relief on this ground.

4. The DHO's Alleged Bias

Petitioner alleges that a his DHO hearing was postponed five times because the originally assigned DHO, Mr. Crumb, did not want to find Petitioner guilty due to lack of evidence[6] and

---

[6] Petitioner alleges that DHO Crumb told Petitioner that Crumb had reviewed the CCTV video ten to fifteen times and did not see Petitioner strike anyone. (ECF No. 1 at 10).

1  was coerced to resign. Petitioner asserts that the acting DHO, Mr. Trimpey, who ultimately
2  conducted Petitioner's hearing was biased, unfair, and uncertified.[7] (ECF No. 1 at 11). In support
3  of this claim, Petitioner alleges that DHO Trimpey incorrectly told Petitioner that he could not
4  play the CCTV video due to security reasons, and when Petitioner told him that previous DHOs
5  have played such videos, Trimpey only partially played it and could not show Petitioner when in
6  the video Petitioner struck Sergeant Firanski. Petitioner further alleges that the still photographs
7  were taken after the incident, Trimpey did not inform Petitioner what the photographs showed,
8  and did not show Petitioner any of the emergency on-site records. Petitioner also claims that
9  there were multiple discrepancies and falsehoods in the DHO report. Petitioner asserts that: DHO
10 Trimpey failed to include Petitioner's assertion of innocence, denial of charges, and explanation
11 that Petitioner was requesting to speak to Major Gooch to raise his safety and security concerns;
12 Petitioner never stated that he could not move to a different unit or that the assault could have
13 occurred by accident; and Trimpey incorrectly stated that Petitioner had no documentary
14 evidence to present. (ECF No. 1 at 12).

15     Initially, the Court notes that Petitioner does not provide any evidence to support his
16 allegation that the originally assigned DHO was coerced to resign because he did not want to
17 find Petitioner guilty. This allegation was raised in Petitioner's appeal to the PMB, which found
18 that there was "no supporting documentation to support [Petitioner's] allegation that the DHO
19 resigned as a result of this incident" and that "[a]llegations of contractor staff misconduct are
20 taken seriously and [Petitioner's] allegations were thoroughly investigated by the Bureau of
21 Prisons oversite staff, and determined to be unfounded." (App. 93).

22     To the extent Petitioner contends that the DHO's failure to play the entirety of the CCTV
23 footage, inform Petitioner what the still photographs showed, and show Petitioner any of the
24 emergency on-site records establish the DHO's bias, the record before this Court does not
25 demonstrate that the DHO "present[ed] such a hazard of arbitrary decision making" Wolff, 418

---

[7] Petitioner contends that DHO Trimpey was uncertified because he did not respond to Petitioner's inquiry as to whether he was certified. (ECF No. 1 at 11). However, the Discipline Hearing Administrator at the BOP's Western Regional Office declared that DHO B. Trimpey "attended the BOP's mandatory DHO Training at the BOP's Management and Specialty Training Center (MSTC) . . . and had been certified in DHO policies and procedures by the BOP on March 30, 2017 . . . [and] had been re-certified on June 3, 2020." (App. 24).

8

U.S. at 571, or "dishonestly suppresse[d] evidence of innocence," Edwards v. Balisok, 520 U.S. 641, 647 (1997), to warrant habeas relief. "[A] prisoner's right to access and prepare evidence for a disciplinary hearing is not unlimited nor unfettered," Melnik v. Dzurenda, 14 F.4th 981, 986 (9th Cir. 2021), and "there is no legal requirement under federal law that the prison authorities produce any specific evidence" at a prison disciplinary hearing, Mancilla v. Biter, No. 1:13-cv-01724-BAM, 2013 WL 6070417, at *6 (E.D. Cal. Nov. 18, 2013).

Petitioner asserts that DHO Trimpey failed to include Petitioner's assertion of innocence and denial of charges in the DHO report. (ECF No. 1 at 12). However, section III(A) of the DHO report indicates that "Inmate denies the charges(s)." (App. 33). Petitioner also contends that the DHO report falsely states that Petitioner "had no documentary evidence to present to the DHO" because "Petitioner gave [the DHO] a cop-out on which Warden clearly stated that Petitioner was resisting escort."[8] (ECF No. 1 at 12; App. 34). However, the petition makes clear that Petitioner had the opportunity to, and in fact did, present this document at the DHO hearing even though the DHO report did not accurately reflect the presentation of this evidence. Petitioner alleges that the DHO report's summary of inmate statement is inaccurate because Petitioner never stated that he could not move to a different unit or that the assault could have occurred by accident and DHO Trimpey failed to include Petitioner's explanation that Petitioner was requesting to speak to Major Gooch to raise his safety and security concerns. (ECF No. 1 at 12). Any inaccuracies in the DHO report's summary of inmate statement do not demonstrate that the DHO "present[ed] such a hazard of arbitrary decision making" Wolff, 418 U.S. at 571, or "dishonestly suppresse[d] evidence of innocence," Edwards, 520 U.S. at 647, violative of due process. The petition does not allege that Petitioner was unable to make statements and explanations in his defense at the hearing, and the DHO relied on evidence other than Petitioner's statements to find Petitioner committed the act as charged. Accordingly, Petitioner is not entitled to habeas relief on this ground.

---

[8] Attached to the petition is a copy of an inmate request to staff form wherein Petitioner professes his innocence. The staff response states: "A review of CCTV shows that you were being escorted when you resisted the escort you were placed against the wall, you continued to resist and was placed on the ground. Staff gave you several orders to move and you disobeyed a staff member directive." (ECF No. 1 at 32).

## III.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that Respondent's motion to dismiss (ECF No. 11) be DENIED and the petition for writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **THIRTY (30) days** after service of the Findings and Recommendation, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 13, 2022**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE